## WOLFE v. SCROGGS.

### June, 1866.

The provision of the acts of 1848 and 1849, allowing a married woman to take by " grant " from any person other than her husband, empowers her (with her husband's assent) to take a mortgage payable to herself, for a debt which was due to both of them; and no one but the husband's creditors can impeach the mortgage on that account.

Maria A. Wolfe sued Gustavus Adolphus Scroggs, sheriff of Erie, in the supreme court, for taking her five cows on an execution against one Schmidt. She claimed to hold the cows by virtue of a chattel mortgage made by Schmidt.

The plaintiff was the wife of Joseph Wolfe. Schmidt was their son-in-law, and being indebted to Mr. and Mrs. Wolfe in the sum of five hundred dollars, they had advanced to him, he gave Mrs. Wolfe a chattel mortgage to secure two hundred dollars, she giving him at the time of execution ten dollars.

The question was whether this mortgage was void, because without consideration, or for want of capacity in the wife to take it, or to make such contracts, or because it could be taken and enforced by the husband alone. The marriage took place before 1847; the mortgage was made in 1859.

*The supreme court* held that the mortgage was valid; and defendant appealed.

WRIGHT, J.—The plaintiff was a married woman. In April, 1859, one Joseph Schmidt executed and delivered to her a chattel mortgage upon five cows and other property. The defendant, as sheriff of Erie county, in July, 1859, took the cows on an execution in favor of Allen McDonald against Schmidt. McDonald was, at the time the mortgage was executed, a simple contract creditor of Schmidt, and, although it was not proved, that he subsequently recovered a judgment for the amount of his debt, or that the execution issued to the defendant, by virtue of which he levied upon and took the cows, had any judgment to support it, the fact seems not to have been questioned, but inferentially conceded, at least, by the plaintiff in her complaint. Without such judgment, the defendant was in no position to raise any question as to the validity of the mortgage. But assuming that he was in a position to raise the question, that the mortgage was without consideration, and that it was fraudulent as to the creditors of Schmidt, how, then, stands the case? The jury passed upon the latter question, under instructions not complained of, and their verdict is conclusive as to the good faith of the transaction. That question is, therefore, out of the case. Was there any or sufficient consideration for the mortgage? The question arises upon exceptions to a portion of the charge of the judge. The evidence given proved, or tended to prove, this state of facts. The plaintiff was a married woman at the time she took the mortgage, and so continued to the trial. She and her husband came from Germany, in 1847, and brought with them over one thousand dollars, the proceeds of a house and lot sold in Germany. One Stengel seems to have had an interest in the money, and they were to support him, and he

came with them to this country. About twelve years before the trial, Schmidt married their only daughter, and about the time of their marriage, they let him have five hundred dollars, he agreeing, when he received the money, to support and take care of the plaintiff, her husband, and Stengel. Schmidt was getting along poorly for some time previous to giving the mortgage, and the plaintiff had been urging him for some security. He said it was right that he should, and that he would give it. She finally asked him for the chattel mortgage in question, and he gave it, and at the time she let him have ten dollars.

Upon this proof, substantially, the judge refused to charge the jury to find for the defendant, but charged, among other things, that if they believed from the evidence that Schmidt, or Schmidt and his wife, received the money upon the agreement, or understanding that Schmidt should contribute to the future maintenance or support of the plaintiff, or of the plaintiff, her husband, and Stengel, such agreement afforded sufficient consideration for the mortgage. This, I think, was not error. Schmidt receives some five hundred dollars (let it be conceded from the husband of the plaintiff), upon an agreement that he, Schmidt, would support or contribute to the future support and maintenance of the plaintiff, her husband, and Stengel. The plaintiff desired security, and Schmidt gave to her alone the chattel mortgage, her husband being still living. I can not doubt there was a good consideration for the mortgage. Concede that the jury found the contract to have been made with the husband; the plaintiff had an interest in the contract. Though a wife, and though her husband was bound to support her, she had certainly an interest in being supported. The husband had made a provision for her support, and this person who had come under obligation to support her, gives her some security for such support. As was pertinently asked by the learned judge who delivered the opinion in the court below, suppose he had given a mortgage upon real estate, running directly to her, and in which all the facts were recited, can any one doubt that such mortgage would be upheld ? I think not.

If it can be said that the motion for a nonsuit raised the question of the capacity of the plaintiff, a married woman, to

take the mortgage and to maintain the action in her name alone, I am of the opinion that it was correctly disposed of. The statute " For the more effectual protection of the property of married women," (*L.* 1848, ch. 200 ; *Id.* 1849, ch. 275,) declares that any married female may take, by gift or grant, from any person other than her husband, and hold to her sole and separate use, real and personal property ; and, I concur, with the supreme court, that the word " grant " is broad enough in meaning to embrace this case.

The provisions of the Code disposed of the questions as to the capacity of the plaintiff to sue. It is provided that the action must be prosecuted in the name of the real party in interest, and that where the action concerns the separate property of a married woman, she may sue alone. *Code of Pro.* §§ 111, 114.

The judgment should be affirmed.

MORGAN, J.—It is made a question in this case by the appellant's counsel whether the plaintiff, being a married woman, was competent to take a personal mortgage in her own name, except it related to her separate property.

Since the statute of 1848 and 1849, her capacity to take by gift, grant, or devise, from any person other than her husband, real and personal property, and hold it to her separate use, with the like effect as if she were unmarried, has been repeatedly decided, and indeed could not be questioned under the provisions of the act of 1849 (*L.* 1849, p. 528, § 2). Knapp *v.* Smith, 27 *N. Y.* 277.

I think the language of that section has been misconceived in some of the cases, by want of attention to the common law disability of man and wife to contract with each other. It was always competent for the husband to transfer his property to a third person, and for the wife to take title to such property through such third person instead of the husband. But the marital rights of the husband would then attach, and he might again reduce her personal property to his possession and control, unless a court of equity interfered to restrain him.

Now, by the statutes of 1848 and 1849, his marital rights are swept away ; and it is no longer in the power of the hus-

band or his creditors, except in cases of fraud, to seize upon property thus transferred as the property of the husband.

The husband may now indirectly vest all his estate in his wife, notwithstanding the provisions of section 2 of the act of 1849.

When she takes title to property from a third person she does not take it from her husband within the meaning of that section, although he once owned it, and transferred the legal title to such third person for the sole purpose of ultimately vesting it in his wife. There is no longer any legal objection to the wife's acquiring and retaining the title to her husband's property, except the common law disability of the one to convey or transfer such property to the other, which disability is still retained by the statutes of this State.*

Another objection is made that there is no consideration as between the parties to the mortgage.

It is admitted, however, that the plaintiff's husband had the right to take such a mortgage to secure the repayment of the moneys which Schmidt, his son-in-law, had obtained under an agreement to support and maintain the plaintiff and her husband.

As the execution was against Schmidt, and not against the plaintiff's husband, what possible interest can the defendant have in such a question ?

The title did not come from the plaintiff's husband to his wife, but from Schmidt; and whether the mortgage was taken to the one or to the other was a matter of no sort of consequence to Schmidt's creditors. Nor was there any impropriety in the husband's consenting to have the legal title vested in his wife in such a case. No one but the husband's creditors can impeach such an arrangement.

The only questions of difficulty in this case were questions of fact, and they are not open to review in this court.

If there was a debt due from Schmidt to the plaintiff, or to the plaintiff's husband, which the mortgage was intended to secure.; and if the transaction was *bona fide* to secure such debt without any intention to defraud the creditors of Schmidt,

---

* Compare Hunt v. Johnson, 44 *N. Y.* 27, where the limitations of this rule are explained.

there is no legal objection to the recovery, and the judgment should be affirmed.

All the judges concurred.

Judgment affirmed. with costs.